**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CIVIL ACTION NO. 1:23-CV-00122-JHM**

**HENRY EARL JONES**                                                      **PLAINTIFF**

**v.**

**WARREN COUNTY REGIONAL JAIL,** *et al.*                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions by Defendants Stephen Harmon and Nora Janes ("Defendants") for summary judgment [DN 60, DN 62] and on a motion by Defendant Harmon to strike Plaintiff Henry Earl Jones's sur-reply [DN 72].  The Court will deny Defendant Harmon's motion to strike Plaintiff's sur-reply.  The Court has considered the sur-reply in deciding these motions.

**I.  BACKGROUND**

On September 22, 2023, Plaintiff filed this *pro se* civil-rights action pursuant to 42 U.S.C. § 1983 against the Warren County Regional Jail ("WCRJ"), Comprehensive Correctional Care, and Jailer Harmon and Nurse Janes in their individual and official capacities stemming from his medical care.  [DN 1, DN 18].  On May 9, 2023, Plaintiff was arrested and incarcerated at the WCRJ as a pretrial detainee.  Prior to his detention, officers transported Plaintiff to TriStar Greenview Regional Hospital ("Greenview Hospital") for medical clearance.  [DN 62-3 at 2].  At Greenview Hospital, Plaintiff complained of shoulder pain and underwent an x-ray of his shoulder which revealed a separation of the acromioclavicular joint (displacement of the distal clavicle) but no fracture.  [*Id.* at 1].  Plaintiff communicated with Greenview Hospital medical staff that he had a history of right humerus fracture with nerve injuries, including chronic numbness and "weakness

of the right hand and scapular winging." [*Id.* at 2].  A physical examination of Plaintiff's right

arm and hand revealed a "[w]ell-healed surgical scar on the humerus and forearm" and right-hand

atrophy. [*Id.* at 4].  Greenview Hospital medical staff ordered a sling and swathe, 10 mg of Toradol

to be administered as needed, and discharged Plaintiff.  [*Id.* at 7, 11].

In his verified complaint, Plaintiff alleges that when he arrived at the WCRJ, he was

wearing "a brace for his fingers" and a "sling."  [DN 1 at 4].  Plaintiff represents that at that time,

he had recently received a tendon transfer to his right hand and, due to the nerve damage, the finger

brace was molded to his hand to aid in healing and to help with his daily activities.  [*Id.*].  Plaintiff

states that upon entry into the WCRJ, Defendant Harmon ordered Plaintiff's brace to be removed.

[DN 18].  Plaintiff asserts that despite repeated requests, both Defendants Harmon and Janes

refused to give him his brace and refused to treat his shoulder injury.  [DN 1].  As a result of this

conduct, Plaintiff claims that Defendants were deliberately indifferent to his medical needs.  [*Id.*].

The Court conducted an initial review of the complaint and amended complaint pursuant

to 28 U.S.C. § 1915A and allowed Fourteenth Amendment claims of deliberate indifference to

Plaintiff's serious medical needs to continue against Defendants in their individual capacities.

[DN 12, DN 17].  Defendants now move for summary judgment on Plaintiff's claims.  [DN 60,

DN 62].  Plaintiff filed a response [DN 68], and Defendants filed replies [DN 69, DN 70].  Plaintiff

also filed a sur-reply.  [DN 71].

## II.  STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no

genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis

for its motion and identifying that portion of the record that demonstrates the absence of a genuine

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992); 28 U.S.C. § 1746.

3

### III. DISCUSSION

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Plaintiff asserts Fourteenth Amendment deliberate indifference claims against Defendants for their alleged treatment of his shoulder injury and the nerve damage to his right hand. The Due Process Clause of the Fourteenth Amendment "forbids holding pretrial detainees in conditions that 'amount to punishment.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment. An officer violates that right if that officer shows deliberate indifference to [a pretrial detainee's] serious medical needs[.]" *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted); *Gist v. Trinity Services Group*, No. 3:22-CV-P270-CHB, 2023 WL 2531735, at *4 (W.D. Ky. Mar. 15, 2023).

The Fourteenth Amendment deliberate indifference standard has both an objective and a subjective component. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 316–317 (6th Cir. 2023). To make out such a claim, a pretrial detainee must demonstrate "(1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or 'recklessly failed to act reasonably to mitigate the risk the serious medical need posed.'" *Grote v. Kenton Cnty.*, 85 F.4th 397, 405

4

(6th Cir. 2023) (quoting *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting

*Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021))); *see also Helphenstine*, 60 F.4th at 317.

### A. Objective Prong:  Serious Medical Need

Defendants argue that summary judgment on Plaintiff's deliberate indifference to his

serious medical need claims are warranted because Plaintiff failed to satisfy the objective prong.[1]

Under the post-*Brawner* framework, the first question is whether the plaintiff had a serious medical

need, which has been defined as "one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for

a doctor's attention."    *Vontz v. Hotaling,* No. 2:19-CV-12735, 2023 WL 2881350, at *6

(E.D. Mich. Mar. 6, 2023) (citation omitted); *see also Burgess v. Fischer*, 735 F.3d 462, 477

(6th Cir. 2013) (explaining that "[t]he ability to satisfy the objective prong with a showing that the

injury was diagnosed by a physician who mandated treatment necessarily contemplates the

diagnosis being made before the defendant's alleged deliberate indifference").  In cases involving

only "minor maladies or non-obvious complaints of a serious need for medical care," or where the

---

[1] Defendants argue that they submitted requests for admissions to Plaintiff to which he did not respond.  As such, Defendants maintain that the admissions are deemed admitted and warrant summary judgment in their favor. Defendants are correct that generally when a plaintiff fails to respond to a request for admission within 30 days, the matter is deemed admitted.  Fed. R. Civ. P. 36(a)(3).  "[A]dmissions from a pro se litigant that are deemed admitted by default 'cannot be the sole basis for granting summary judgment if Plaintiff was not warned in the requests for admissions of the consequence of failing to respond timely.'"  *Compton v. Laing*, No. 1:21-CV-00104-GNS, 2022 WL 2252597, at *2 (W.D. Ky. June 21, 2022) (quoting *Jones-Bey v. Conrad*, No. 3:16-cv-723-DJH, 2020 WL 2736436, at *4 (W.D. Ky. May 26, 2020)).  Both the requests for admissions submitted to the Court provided the required notice.  [DN 60-3 at 1, DN 62-5 at 1].

Notwithstanding, the Court is concerned about whether Plaintiff received the requests for admissions. Because the Court grants *pro se* litigants more leeway than counseled litigants, the Court finds it a better practice in *pro se* litigation for counsel to contact the *pro se* litigant to make sure he or she received the requests for admissions and to attempt to resolve the discovery dispute.  *See*, *e.g.*, *Gilliam v. Ordiway*, No. 15-CV-11833, 2016 WL 6803135, at *3 (E.D. Mich. Oct. 20, 2016) ("the undersigned would be disinclined to strictly apply [Rule 36] against parties unfamiliar with federal practice"); *Morris v. Christian Cnty. Sheriff's Dep't,* No. 5:12-CV-00156-TBR, 2013 WL 5934151, at *5 (W.D. Ky. Nov. 5, 2013) (noting the court's inclination to permit *pro se* plaintiff a final opportunity to respond to requests for admission before sanctioning him).  If the discovery dispute cannot be resolved without the aid of the Court, counsel should file a motion to compel pursuant to Federal Rule of Civil Procedure 37.  Accordingly, the Court declines to deem the requests for admissions admitted for purposes of the instant motions for summary judgment.

deliberate indifference claim is based on the prison's failure to treat a condition adequately, then the plaintiff must also submit verifying medical evidence to satisfy the objective component. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004); *see also Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

Here, it is undisputed that Plaintiff arrived at the WCRJ with a separation of the acromioclavicular joint in his shoulder but no fracture. [DN 62-3 at 1]. Medical records from Greenview Hospital noted that Plaintiff had a "[w]ell-healed surgical scar on the humerus and forearm" and that "his "right hand appears atrophic." [*Id.* at 4]. Based on the examination performed by Greenview Hospital, Plaintiff suffered from serious orthopedic medical needs. It is also undisputed that upon entry to the WCRJ, Plaintiff's right-hand brace issued prior to his arrest was confiscated because it contained metal and was subsequently lost by the WCRJ staff. Plaintiff did not have a hand brace for at least eight months. [DN 71 at 1, DN 22-1, DN 24-1].

However, because Plaintiff's claims are based on Defendants' failure to treat his conditions adequately, Plaintiff must submit verifying medical evidence to satisfy the objective component under current Sixth Circuit case law. In his sur-reply, Plaintiff represents that at his December 5, 2024, appointment with his shoulder specialist, Dr. Jiyad Zou explained to him that his "AC Joint Separation" contained a significant amount of scar tissue and "that due to going so long without me getting or having the procedure done to correct my 'AC Joint Separation' has caused additional nerve damage and pain." [DN 71 at 1]. Despite Plaintiff's representation, the record does not contain any medical records from Plaintiff's December 5, 2024, appointment with Dr. Zou. While it is possible that medical records exist from Plaintiff's treating specialists that reflect that a delay in returning or replacing his hand brace or a delay in having surgery on his shoulder detrimentally

6

affected Plaintiff's ultimate injury, Plaintiff has failed to identify such medical evidence. Accordingly, Plaintiff fails to satisfy the objective prong of the deliberate indifference standard.

Notwithstanding, for purposes of these motions for summary judgment, the Court will address the subjective prong of the deliberate indifference standard.

### B. Subjective Prong:  Reckless Disregard

Even if Plaintiff could survive summary judgment on the objective component of the deliberate indifference analysis, he nonetheless fails to raise a genuine dispute that Defendants acted with reckless disregard to establish the modified subjective component.

To prove the subjective prong of deliberate indifference in the context of a pretrial detainee, a plaintiff must prove, "more than negligence but less than subjective intent—something akin to reckless disregard." *Mercer v. Athens Cnty.*, 72 F.4th 152, 161 (6th Cir. 2023) (internal quotation omitted).  Each Defendant must be considered individually. *Id.* at 161 ("We consider each defendant individually because we cannot impute knowledge from one defendant to another[.]") (internal quotations and citations omitted).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  "As to the second prong, it is important to note that *Brawner* did not change the principle that mere medical negligence, nor a disagreement between treater and patient as to the better course of treatment, does not equate to a constitutional violation[ ] under . . . the Fourteenth Amendment." *Vontz*, 2023 WL 2881350, at *6 (citing *Brawner*, 14 F.4th at 596); *see also Darby v. Greenman*, 14 F.4th 124, 129 (2d Cir. 2021) (holding, after the modification of the second prong of the Fourteenth Amendment's deliberate indifference standard in *Kingsley v. Hendrickson*, 576

U.S. 389 (2015), that "a difference of opinion about the proper course of treatment" does not demonstrate deliberate indifference).

The record reflects that upon entry to the WCRJ on May 9, 2023, Plaintiff's hand brace was initially taken away by jail staff because it contained metal and could be used as a weapon. [DN 60 at 3]. Plaintiff was permitted to retain the sling provided by Greenview Hospital for the acromioclavicular joint separation in his shoulder. [DN 62-3 at 11, DN 62-4 at 37]. Throughout his detention at the WCRJ, Plaintiff sought treatment for and reported symptoms related to his shoulder pain. [DN 68-2, DN 68-3, DN 68-4]. Specifically, the record reflects that on May 11, 2023, Plaintiff submitted an inmate medical request form indicating that his shoulder and collar bone was "fractured and possibly broken" and that he possibly had a sexually transmitted disease ("STD"). [DN 62-4 at 30]. In response, medical staff placed Plaintiff on the list for treatment and indicated a follow-up appointment with orthopedics. [*Id.*]. On May 13, 2023, Plaintiff again complained of shoulder pain and was informed by medical staff of his upcoming doctor's appointment. [*Id.* at 25]. Medical records reflect that on May 16, 2023, medical staff ordered ibuprofen 600mg for Plaintiff. [*Id.* at 45]. On May 21, 2023, Plaintiff complained of having discharge related to an STD and medical staff scheduled his urine to be tested. [*Id.* at 32]. The urine sample came back "within normal limits." [*Id.* at 33].

On May 23, 2023, Plaintiff attended an appointment with an outside orthopedic specialist, Dr. Sameer Badarudeen, who recommended a sling and physical therapy with follow-up appointments. [*Id.* at 28]. On May 24, 2023, Plaintiff filed a grievance with the WCRJ stating that he had a received a tendon transfer in 2021 and a tendon correction in February 2023. He complained that he had been informed by medical staff that he should utilize a therapy ball to strengthen his right hand, but that the purchase and its use would have to be approved by Defendant

Harmon.  [DN 62-2 at 3].  In response to the grievance, Defendant Janes stated that Plaintiff was assessed, and it was noted that he needed a stress ball to increase his muscle tone in his right fingers.  [*Id.* at 4].  Both Defendants wrote on the grievance form that the stress ball had been ordered and would be provided to Plaintiff.  [*Id.*].  On May 29, 2023, Plaintiff again complained about his collar bone, shoulder, and possible STD.  [DN 62-4 at 33].  Medical staff once again informed him that he had a follow-up doctor's appointment scheduled in less than a month and again ordered ibuprofen for pain.  [*Id.*].

On June 5, 2023, Plaintiff filed a grievance complaining that he was not receiving proper medical treatment and that he was not being given Gabapentin.  [DN 68-2 at 5].  Defendant Janes informed Plaintiff that Gabapentin could not be administered at the facility because it was a controlled substance and that he had an upcoming follow-up appointment with an outside specialist for his shoulder.  [*Id.* at 6].  Plaintiff was seen again by medical staff on June 6, 2023.  [DN 62-4 at 44].  Medical records indicate that at the time of his examination, he was wearing a sling and was prescribed Lyrica 75mg as a substitute for Gabapentin for his shoulder/hand and Azithromycin for the discharge related to his alleged STD.  [*Id.*].  Once the prescription arrived, medical staff started Plaintiff on Lyrica.  [*Id.* at 41].  On June 27, 2023, Plaintiff attended a follow-up appointment with Dr. Badarudeen, who referred him to Dr. Chaitu Malempati for an appointment on July 23, 2023, who scheduled an MRI of his shoulder for July 25, 2023.  [*Id.* at 29, 37].

On August 21, 2023, Plaintiff filed a grievance appeal regarding the return of his custom molded hand brace and discontinuation of his neuropathy medication.  [DN 22-1 at 1].  On August 22, 2023, Defendant Harmon personally requested that Plaintiff be seen by medical staff regarding his medication and a molded hand brace.  Jailer Harmon requested to be present at the visit.  [*Id.* at 2, DN  62-4 at 40].  At that visit, ARNP Barry Dority prescribed Nortriptyline and stated that

9

he would "locate brace for evaluation." [*Id.* at 43].  Medical records further reflect that on September 5, 2023, Plaintiff met with medical staff at the WCRJ and confirmed that Nortriptyline is "doing its job," but he expressed concern over finding his brace. [DN 62-4 at 37].  In September, Defendant Janes reached out to Dr. Malempati's office to determine the proper course of action based on the results of Plaintiff's MRI. [*Id.* at 36–37].  After repeated attempts, Plaintiff's follow-up appointment was scheduled with Dr. Malempati for October 23, 2023. [*Id.* at 24, 36].

On November 7, 2023, Defendant Janes called Tri-State Orthopedics to "follow up on the ROI that was sent on 08/25/23 and then resent on 10/06/2023" and left a voice message. [*Id.*].  Defendant Janes called Tri-State Orthopedics again and was told that Plaintiff previously had a custom splint made for his right hand, and that the office would see "what we can do about getting him another to replace the misplaced splint." [*Id.*].  Defendant Janes then spoke with Dr. Malempati's office and asked if Plaintiff could have another "Static Hand Base Splint" made. [*Id.*].  On November 13, 2023, Plaintiff underwent an EMG and Nerve Conduction Test ordered by Dr. Malempati. [*Id.* at 13–14].  On November 17, 2023, Dr. Malempati's office contacted Defendant Janes informing her that Plaintiff had significant nerve damage, cancelled the follow-up appointment with him, and referred Plaintiff to a nerve specialist for further evaluation. [*Id.* at 35–36].  When Defendant Janes inquired about the brace for Plaintiff's right hand, Dr. Malempati's office stated that a brace would not be made before the consultation with the nerve specialist. [*Id.* at 18, 35–36].  On November 17, 2023, Defendant Janes requested that medical staff see Plaintiff to inform him of the nerve test results and referral. [*Id.* at 39].  On December 21, 2023, Plaintiff submitted another grievance complaining about his shoulder. [DN 24-1 at 1].  Defendant Janes responded informing Plaintiff that he has an appointment with a nerve specialist scheduled and "that this nurse cannot make the doctors 'fix' his shoulder." [*Id.* at 2].

On January 1, 2024, Defendant Janes was informed by Defendant Harmon that Plaintiff was hoarding Nortriptyline. [DN 62-4 at 35]. At that time, Defendant Janes instructed medical staff to discontinue Nortriptyline because of this conduct. [*Id.*]. During this time, Plaintiff was prescribed ibuprofen and an ice pack for the pain. [DN 60-2 at 16]. On March 12, 2024, at Plaintiff's request, Nortriptyline was prescribed again and was ordered "crushed" to prevent hoarding. [DN 62-4 at 8, 35].

On January 16, 2024, Plaintiff was seen by Hand Specialist Dr. Tuna Ozyurekoglu at Kleinert Kutz Hand Care Center who ordered an anti-claw orthopedic brace and referred Plaintiff to a shoulder surgeon. [*Id.* at 35, 37]. When he returned to the WCRJ from the appointment, Plaintiff had a sling on his right arm and a white brace on his right hand with "a rivet in the palm area." [*Id.*]. Medical staff issued a permission form for Plaintiff to utilize the brace in the jail. [*Id.* at 21].

Medical staff at the WCRJ also attempted to set up an appointment with Dr. Edward Tillet's office, the recommended shoulder surgeon. [*Id.* at 11]. After numerous attempts and an eventual cancellation of the appointment by Dr. Tillet's office, Plaintiff was referred to another doctor, Dr. Jiyao Zou, at the University of Louisville for evaluation. Dr. Zou ordered physical therapy for Plaintiff's shoulder and scheduled a follow-up appointment for May 22, 2024. [*Id.* at 1–4, 9, 11]. During this time frame, Plaintiff had physical therapy appointments monthly and an occupational therapy appointment on June 13, 2024.[2] On June 13, 2024, an Inmate Priority Movement Form was completed by the WCRJ recommending that Plaintiff be moved to another facility to receive

---

[2] Plaintiff filed a grievance and an appeal in March 2024 inquiring about shoulder surgery and about why he was being referred to another specialist. [DN 24-1 at 5–7]. Defendants responded that they had located a specialist who would see Plaintiff and an appointment had been scheduled. [*Id.*].

additional medical care. [DN 60-1 at 1]. Defendant Janes prepared a letter attached to the form

to support the request. The request was approved on June 18, 2024.

### 1. Nurse Janes

Contrary to Plaintiff's argument, the record does not evince recklessness on Defendant

Janes's behalf. Plaintiff's assertion that he was denied treatment for his documented medical

conditions is belied by the record. Plaintiff's concerns amount to a disagreement with Defendant

Janes, his treating physicians, and other medical staff on the timeliness of his follow-up visits with

the specialists, Dr. Ozyurekoglu's decision to refer him to another shoulder specialist for surgery,

the delay in obtaining a right-hand brace, and the proper course of treatment and medication for

his acromioclavicular joint separation and his right-hand atrophy, which cannot form the basis of

a Fourteenth Amendment deliberate indifference claim. *See Helphenstine*, 60 F.4th at 322 (post-

*Brawner* Fourteenth Amendment deliberate indifference case observing that, generally, a patient's

disagreement with physician's course of treatment alleges, at most, medical malpractice and is not

cognizable under § 1983); *Taylor v. Well Path Medical*, No. 3:22-CV-00705, 2024 WL 3897449,

at *8 (M.D. Tenn. Aug. 20, 2024) (pretrial detainee's "desire for different, more aggressive, or

more prompt treatment is simply not sufficient to support a constitutional claim."); *Wagle v.

Farris*, No. 5:21-CV-12881, 2023 WL 5988615, at *6 (E.D. Mich. July 25, 2023) (granting

summary judgment where plaintiff disagreed with physician's course of treatment). While

Plaintiff may disagree with the adequacy of the treatment he received, such disagreement does not

rise to a constitutional infirmity. *Taylor*, 2024 WL 3897449, at *8 ("In the end, Plaintiff's claim .

. . is based upon Plaintiff's dissatisfaction with the adequacy of the treatment that he received,

which is insufficient to support a constitutional claim.").

Additionally, the record shows that Defendant Janes actively sought treatment and medical equipment for Plaintiff with numerous calls to specialists and other medical staff for follow-up appointments and records regarding his original molded hand brace.

Furthermore, ARNP Barry Dority and Defendant Janes's determination that Plaintiff did not need a different neuropathic medication "amounts to one doctor's difference of opinion with another's about the proper course of treatment, which may give rise to a negligence claim, but negligence is not sufficient to meet the modified standard under *Brawner*." *Cook v. Daviess Cnty. Det. Ctr.*, No. 4:22-CV-P48-JHM, 2023 WL 8004874, at *8 (W.D. Ky. Nov. 17, 2023) (citing A*nderson v. Monroe Cnty. Corr. Facility*, No. 2:22-CV-4428, 2023 WL 3814001, at *2 (S.D. Ohio June 5, 2023)); *see also Hutchins v. Pollack*, No. 1:22-CV-950, 2024 WL 3290840, at *8 (W.D. Mich. Feb. 29, 2024) (pretrial detainee's contention that he should have been prescribed a particular medication was insufficient to satisfy the subjective component of the Fourteenth Amendment deliberate indifference standard).

Based on this record, Plaintiff has failed to raise a genuine dispute as to whether Defendant Janes acted either intentionally to ignore a medical need, or recklessly failed to act reasonably to mitigate the risk the serious medical need posed.

### 2. Jailer Harmon

Plaintiff claims that when he was processed at the WCRJ, his right-hand brace was removed at the direction of Defendant Harmon and was never returned to him. [DN 18]. Plaintiff characterizes this conduct as unreasonable, deliberate, and negligent. [DN 71 at 1]. Upon the Court's initial review of Plaintiff's claims against Defendant Harmon, the Court permitted this claim to go forward because it could possibly be inferred from the right-hand brace that Plaintiff had a pre-existing injury to his hand and removal of Plaintiff's medical equipment could have

resulted in more serious injury. *See, e.g., Robinson v. Brege*, No. 1:20-CV-449, 2021 WL 5495899, at \*3 (W.D. Mich. Oct. 19, 2021) (citing *Egberto v. Nevada Dep't of Corrs.*, 678 F. App'x 500, 504–05 (9th Cir. 2017) (applying deliberate indifference standard to prisoner's claim that the defendants confiscated his walker that a doctor had recommended he use; "[s]ince this denial ran counter to the instructions of the prisoner's treating physician, it could support a finding of deliberate indifference" (internal quotation marks and brackets omitted)).

However, in the present case, no evidence exists in the record to support such an inference or to support Plaintiff's claim that Defendant Harmon acted with reckless disregard with respect to Plaintiff's right-hand atrophy or shoulder joint separation such to establish the modified subjective component. As stated in more detail above, prior to Plaintiff's arrest, an orthopedic office had manufactured a right-hand brace for Plaintiff. [DN 62-2 at 10 (August 20, 2020, Medical Records)]. The record does not reflect that Defendant Harmon or any one at the WCRJ knew this information at the time of Plaintiff's arrest. Upon arrest, Plaintiff was taken to the Greenview Hospital for medical clearance to enter the WCRJ because of Plaintiff's complaint of shoulder pain. Greenview Hospital medical staff diagnosed Plaintiff with a dislocation of the right acromioclavicular joint in his shoulder, prescribed a sling, and instructed Plaintiff to return for a follow-up visit with the physician.

Relatedly, no evidence exists that Plaintiff notified the WCRJ upon his admission that he recently had tendon surgery and needed to continue to utilize the brace. [DN 62-2 at 1]. Instead, it is undisputed that the brace was removed because of security concerns, while the WCRJ staff permitted Plaintiff to retain the sling that was prescribed by Greenview Hospital for the shoulder injury diagnosed by the hospital. Not until Plaintiff's inmate grievance form dated May 24, 2023, did Plaintiff disclose that he had tendon surgery on February 2, 2023, and requested a therapy ball.

He did not mention the brace.  [*Id.* at 3].  In response, Defendant Janes confirmed that she had recommended a stress ball because Plaintiff had low muscle tone in the right fingers.  Upon review of the grievance, Defendant Harmon confirmed that a stress ball had been ordered and would be provided to Plaintiff when it arrived.  [*Id.* at 4].

The next reference to the brace that the Court can locate is an entry in the medical records dated August 22, 2023, which states that Defendant Harmon requested medical staff to see Plaintiff regarding a grievance/appeal he had filed "regarding a medication and a molded hand brace." [*Id.* at 13].  On that same day, ARNP Dority saw Plaintiff with Defendant Harmon present. [DN 62-4 at 43].  ARNP Dority prescribed Nortriptyline for Plaintiff and indicated that he "will evaluate brace to get approval." [*Id.*].  On September 5, 2023, ARNP Dority conducted a follow-up appointment with Plaintiff who indicated the Nortriptyline was doing its job but was concerned "over finding his brace." [*Id.* at 37].  It is undisputed that the right-hand brace was misplaced or lost while Plaintiff was at the WCRJ.

First, Plaintiff failed to submit any evidence that Defendant Harmon's removal of the brace for security reasons was done either intentionally to ignore a medical need or recklessly to cause further injury to Plaintiff's right hand or shoulder.  No evidence exists to suggest that Defendant Harmon destroyed the brace, had it destroyed, or that he instructed medical staff not to examine the brace to determine whether Plaintiff could have it in the facility.  There is no evidence that Defendant Harmon interfered with medical's evaluation or treatment.  In fact, in August 2023, upon learning that Plaintiff had a prescribed molded hand brace prior to his detention at the WCRJ, Defendant Harmon requested the ARPN to examine Plaintiff at which time the ARPN indicated that he would evaluate the brace to obtain approval for it.  Unfortunately, at that time, the brace had been lost.

15

Second, the record reflects that Defendant Harmon as the WCRJ Jailer deferred to medical staff, approved outside specialist and devices, and, in response to Plaintiff's grievance regarding his missing molded hand brace, requested medical staff to see Plaintiff.  The Sixth Circuit has recognized that generally "a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he reasonably deferred to [a] medical professionals' opinions." *Greene*, 22 F.4th at 608 (internal quotations omitted); *see also Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same).

Here, it is undisputed that medical staff and outside specialists treated Plaintiff, arranged for follow-up appointments regarding his orthopedic issues, and facilitated his receipt of a new right-hand brace, and that Defendant Harmon, who is not medically trained, reasonably deferred to those medical determinations.  As such, there is no evidence from which a reasonable jury could find that Defendant Harmon acted intentionally to ignore a medical need, or recklessly failed to act reasonably to mitigate the risk the serious medical need posed to Plaintiff.  *See Shaw v. McCracken Cnty. Fiscal Ct.*, No. 5:19-CV-45-BJB, 2024 WL 457165, at *7 (W.D. Ky. Feb. 6, 2024) (granting summary judgment on detainee's deliberate indifference claim where plaintiff "has not identified any record evidence regarding information known to—but ignored by—[Defendant] that should've led her to second guess the medical staff's prescribed treatment.").

Finally, while Plaintiff characterizes Defendant Harmon's conduct as negligent [DN 68], it is well-settled that "negligence is insufficient" to raise a constitutional issue. *Brawner*, 14 F.4th at 596.

17

Thus, Plaintiff has failed to establish that Defendants were deliberately indifferent to his serious medical needs, and the Court finds that Defendants Janes and Harmon are entitled to summary judgment.

**IV.**

For the foregoing reasons, **IT IS ORDERED** as follows:

(1)  Defendant Harmon's motion to strike Plaintiff's sur-reply [DN 72] is **DENIED**.

(2)  Defendants' motions for summary judgment [DN 60, DN 62] are **GRANTED**.

(3) The Court will issue a separate Judgment consistent with this Memorandum Opinion and Order.

Date:  April 23, 2025

Joseph H. McKinley Jr., Senior Judge

United States District Court

cc:    Plaintiff, *pro se*
       Counsel of Record
4414.014